UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
800 FRONT STREET CORPORATION, et al.,

                 Plaintiffs,

                               **ORDER**
    -against-                         CV 06-500(LDW)(ARL)

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, et al.,

                 Defendants.
----------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

Before the court is the defendant Travelers Property Casualty Company of America's

("Travelers") letter application seeking to compel a third party, Exponent Engineering, to comply

with a subpoena served on it on August 3, 2006. Exponent opposes the motion by letter dated

October 27, 2006. Non-parties, ClearBid Inc., The Gordon Company and NREL, Inc. (referred to

in the motion papers as the "Liquidators") have also joined in the opposition. For the reasons set

forth below, the motion is granted, in part.

**BACKGROUND**

The plaintiff, 800 Front Street Corporation, commenced this action on December 27,

2005, in the Nassau County Supreme Court, seeking to recover insurance proceeds for damage

caused to its premises when the boiler failed resulting in the freezing of pipes and the discharge of

water. The defendant removed the action to this court on February 6, 2006. The plaintiffs also

seek coverage in this matter from the defendant, Hartford Steam Boiler Inspection and Insurance

Company ("HSB"), the issuers of a boiler and machinery policy.

The defendant Travelers has engaged an expert to examine the boiler modulating valve,

which Travelers suspects may have failed causing the boiler to shut down and lead to the incident.

Travelers contends that "whether the boiler modulating valve failed may determine whether the plaintiff's claim is covered under the Travelers policy or the HSB policy." However, the boiler modulating valve was removed from the building two years ago by Exponent, a science and engineering firm, hired by the Liquidators to determine the cause of the boiler failure.[1] Travelers contends that information concerning Exponent's work on the component, the nature of tests performed on it, the conditions under which it has been kept, and the manner in which it was transported, is necessary for its expert to perform a meaningful inspection and test of the valve. Travelers also seeks the opinions and conclusions reached by Exponent as a result of that work.

Exponent has objected to producing any documents in response to the subpoena based on the work product doctrine and the attorney-client privilege. Exponent also contends that producing the information would require Exponent to provide intellectual property without compensation. The Liquidators join in the opposition on the same grounds. Although Exponent has not prepared a privilege log, Exponent has outlined the documents that are in dispute as follows: (1) a letter report from Exponent to the Liquidator's attorney; (2) e-mail communications with counsel and within Exponent regarding Exponent's work; (3) handwritten notes prepared by Exponent employees in the course of their investigation; (4) annotated photographs; (5) weather synopsis; (6) motor test protocol; (7) color photos; (8) four rolls of negative film; (9)2 CDs; (10) Exponent's invoices for the work.

___

[1] The Liquidators, who purchased the personal property from the premises, are also pursuing a claim under the Travelers policy for damage to the contents of the building as a result of the incident. That claim is being litigated in the Eastern District of New York Bankruptcy Court because the property was occupied by an entity that is in Chapter 7 bankruptcy proceedings. Pursuant to an order of Judge Wexler dated August 3, 2006, the liquidator's claim is likely to be transferred to this court and consolidated with this action once the pretrial proceedings have been completed.

**DISCUSSION**

Although Exponent was neither hired by a party to this action, nor has stated whether it

will be asked to testify on the Liquidator's behalf, the court will treat Exponent as a non-testifying

expert for the purpose of this motion because Judge Wexler's has already determined that the

Liquidator's claim is likely to be consolidated with this action and the parties have cited to Rule

26(b)(4)(B) in the motion papers.  Fed R. Civ. P. 26(b)(4)(B) governs the discovery of non-

testifying experts.  Specifically, the rule provides:

> A party may, through interrogatories or by deposition, discover facts
> known or opinions held by an expert who has been retained or
> specifically employed by another party in anticipation of litigation
> or preparation for trial and who is not expected to be called as a
> witness at trial, only . . . upon a showing of exceptional
> circumstances under which it is impracticable for the party seeking
> discovery to obtain facts or opinions on the same subject by other
> means.

The policy considerations underlying this rule include the view that each side should prepare its

own case, at its own expense, and that parties should feel free to use experts to properly evaluate

their case without fear that it may "yield grist for the adversary's mill." *See Long Term Capital*

*Holdings v. United States*, 2003 U.S. Dist. LEXIS 14579 * 2 (D. Conn. May 6, 2003).  However,

non-testifying expert are not immune from discovery where exceptional circumstances can be

shown by the party seeking the discovery.

"There are two situations where exceptional circumstances are commonly identified: (1)

where the object or condition observed by the non-testifying expert is no longer observable by the

expert of the party seeking discovery, and (2) where it is possible to replicate discovery on a

contested issue but the cost would be prohibitive." *See Vincent v. Mortman,* 2006 U.S. Dist.

LEXIS 60442 (D. Conn. Aug. 11, 2006).  Travelers contends that "if [its] experts' investigation is

to have any meaning, those experts must be ale to determine whether the condition of the boiler modulating valve has changed during the two years it has been in Exponent's custody." The court agrees. To begin with, the fact that the part was removed deprives Travelers of the opportunity to inspect the part in its original setting. This information is solely within Exponent's possession. Moreover, common sense dictates that central to the reliability of any findings by Traveler's experts is their ability to account for any possible alterations to the valve resulting either from the manner in which it was maintained or tested while in Exponent's control. Once again this information is known only by Exponent. Accordingly, the court finds that exceptional circumstances exist to warrant disclosure.

Having determined that exceptional circumstances exist, the court's analysis turns to the objections of Exponent and the Liquidators based on the attorney-client privilege and the work product doctrine. First, the court agrees that the information collected by Exponent during the course of its work is not protected by the attorney-client privilege. Exponent was hired by the Liquidator's attorneys to determine the cause of the boiler failure. In that role, Exponent took possession of the boiler modulating valve and performed certain test to determine if the boiler had failed. Exponent's information did not come from the Liquidators, and the parties do not argue otherwise. Thus, the information generated by Exponent is not protected by the attorney-client privilege. *See U.S. Postal Serv. v. Phelps Dodge Ref. Corp.,* 852 F. Supp. 156, 161 (E.D.N.Y. 1994)(work performed by engineering firm not covered by the attorney-client privilege where consultant's opinion was based on factual and scientific evidence rather than client confidence).

Exponent and the Liquidators also invoke the work product doctrine. Fed. R. Civ. P. 26(b)(3) provides that, "[s]ubject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for

trial by or for [a] party, or by or for that . . . party's representative (including the . . . party's

attorney, consultant, surety, indemnitor, insurer or agent). . . only upon a showing that the party

seeking discovery has substantial need of the materials in the preparation of the party's case . . ."

In determining whether the work product doctrine applies, a court must establish whether the

documents were prepared or obtained by a party in anticipation of litigation.  *See Occidental*

*Chemical Corp., v. OHM Remediation Serv. Corp.,* 175 F.R.D. 431, 434 (W.D.N.Y. 1997).  As

with the attorney-client privilege, the party invoking the work product privilege bears the burden of

establishing all its elements.  *See Magee v. Paul Revere Life Ins. Co.,* 172 F.R.D. 627, 640

(E.D.N.Y. 1997)(citing *United States v. Constr. Prods. Research,* 73 F.3d 464, 473 (2d Cir.), *cert.*

*denied,* 117 S. Ct. 294 (1996) (additional citations omitted)).

The threshold question is whether the documents at issue were prepared in anticipation of

litigation by or for a party to this case.  Travelers contends that they were not.  In this regard,

Travelers contends that the Liquidator's are not a party to this action, and therefore, the work

performed by the Liquidator's consultants is not protected.  Second, Travelers argues that Exponent

was retained and performed its work long before they presented a claim to Travelers, and thus,

litigation was not imminent.

In support of its first argument, Travelers relies on *Ricoh Co., Ltd. v. Aeroflex, Inc.,* 219

F.R.D. 66 (S.D.N.Y. 2003) in which the court considered the work product doctrine attached to e-

mails exchanged between non-parties.  The defendant in *Ricoh* argued that because they shared

counsel in a related lawsuit with one of the non-parties in question, the non-party should be

considered a party to the instant lawsuit for work product purposes.  In rejecting that argument, the

Southern District stated:

> Courts have routinely held that documents prepared by one who is
> not a party to the case at bar are not protected by Rule 26(b)(3) even

if the non-party is itself a party to a closely related lawsuit in which
he will be disadvantaged if he must disclose in the instant suit.

*Ricoh,* 219 F.R.D. at 69. However, in reaching its decision, the court noted that the non-party

witness whose documents were subpoenaed was not a party to the action or a related action and did

not have an interest in the outcome. The same can not be said of Exponent. Exponent was retained

as a consultant for the Liquidators in connection with its claim against Travelers. The Liquidator's

claim concerns the same subject matter as is raised in this lawsuit. Moreover, as previously stated,

it is expected that the Liquidator's case will be joined with this lawsuit in the near future. Thus, for

purposes of the work product issue, the court will treat the Liquidators and their consultants as

parties to this lawsuit.

As to the issue of whether the documents were prepared in anticipation of litigation, the

court finds that they were. There is no doubt that the documents were prepared at the direction of

the Liquidator's counsel in anticipation of the claims it would be asserting against Travelers.

Exponent was retained by the Liquidators counsel shortly after they were given authorization by the

bankruptcy court to pursue the insurance claim as well as litigation against Travelers. Four months

after Exponent completed its causation report the Liquidators filed suit. Thus, the materials

prepared by Exponent clearly meet the "prepared because of litigation" standard set forth by the

Second Circuit in *United States v. Adlman,* 134 F.3d 1194 (2d Cir. 1998). Accordingly, the court

finds that the work product doctrine attaches to the documents at issue.

Once established, the work product privilege generally protects "attorneys' mental

impressions, opinions or legal theories concerning specific litigation" from discovery, *Horn &*

*Hardart Corp. v. Pillsbury Co.,* 888 F.2d 8, 12 (2d Cir. 1989); *see also In re Grand Jury*

*Proceedings,* 219 F.3d 175 (2d Cir. 2000). However, as stated above, exceptional circumstances

exist to warrant certain disclosure since the valve has been removed from its location at the time of

the incident and has been in the possession of Exponent for two years.  In fact,  the Liquidators have no objection to "Exponent testifying as to the 'chain of custody' regarding the motor and the valve as well as what steps Exponent took to maintain the valve since it has been in its custody."  Synder letter at 3.  In addition, the court finds that Travelers is entitled to question Exponent about any tests it conducted and/or any alterations or changes made to the removed components.  Finally, Exponent shall also provide Travelers with its handwritten notes, the annotated photographs; the weather synopsis; the motor test protocol; the color photos; the four rolls of negative film; and the 2 CDs to the extent those documents reflect or show the boiler and its component parts in their original state at or soon after the time of the incident.  Exponent may redact any information containing its opinion or conclusion as to the cause of the incident and need not provide counsel with copies of its invoices.

Dated: Central Islip, New York
      November 17, 2006

**SO ORDERED:**


_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge